61126. WILLIAMS et al. v. THE STATE.

POPE, Judge.

Appellants Ronald and Dean Williams were indicted on two counts of failing to pay for agricultural products. A directed verdict was entered in favor of Dean Williams on one of the counts, but the jury returned a verdict of guilty against her on the remaining count and against Ronald Williams on both counts. Appellants enumerate as error the trial court's charge as to "parties to a crime" and its rulings on venue, on admitting testimony regarding allegedly similar offenses committed by appellants, and on the sufficiency of the evidence as to intent. We find no error and affirm.

1. Ronald Williams was the president and sole stockholder of New River Grain Company, Inc. (hereinafter "New River"); his wife Dean was secretary-treasurer of the corporation. Between July 10 and July 12, 1979 three loads of corn were picked up by New River trucks from the premises of Harris Gladin in Tift County pursuant to an agreement negotiated by Gladin, his partner Lamar Joyner and New River's manager Nolan Bennett. The agreement contemplated a cash sale whereby payment was to be made as soon as the corn was

picked up and weighed at New River's facility in Berrien County. Payment was made by a check written on New River's account and signed by Ronald Williams; the check was dishonored for insufficient funds and Gladin and Joyner had not been paid for their corn at the time of trial. Between July 2 and July 10, 1979 several loads of corn were picked up by New River trucks from the Tift County farm of L. A. and Roger Womack pursuant to an agreement similar to the Gladin-Joyner agreement set out above. Payment for this corn was also made by check written on New River's account but signed by Dean Williams; this check was also dishonored and the Womacks had not been paid for their corn at the time of trial.

The evidence showed that neither appellant was present during the negotiations for the sale of the corn and that neither personally removed the corn from Tift County. Appellants assert that they had no personal knowledge of or involvement in the above transactions until their respective signatures were requested by New River employees on the checks issued as payment for the corn. Appellants urge on appeal that the evidence presented at trial failed to show that appellants intended to defraud the owners of the corn and, as a result, failed to show that a crime had been committed.

Appellants were indicted for failing to pay for agricultural products in violation of Code Ann. § 5-9914 which provides: "Any person, either on his own account or for others, who shall buy . . . corn . . . and shall fail or refuse to pay therefor or shall make way with or dispose of the same before he shall have paid therefor unless credit shall be expressly extended therefor, shall be guilty of a felony . . ." The evidence showed that the truck drivers who picked up the subject corn were hired by Ronald Williams. He also hired Nolan Bennett as manager for New River. Martha Clements was hired and trained by Ronald as New River's bookkeeper. Bennett was authorized to buy and sell grain on behalf of New River and talked often with Ronald regarding these transactions; however, only appellants were authorized to sign checks drawn on New River's account.

Early in 1979 New River began experiencing financial difficulties resulting from its inability to fulfill a contractual commitment. Appellants discussed New River's financial condition with Bennett and Clements. Beginning in mid-April, Clements began preparing weekly balance sheets showing New River's financial condition. These balance sheets were left in Ronald's private office at New River. Clements testified that nearly every week during the time she worked for New River, checks were returned for insufficient funds. She stated that appellants were told each time a check was returned and were apprised of their financial situation at that time.

Upon her inquiry as to what action to take regarding the dishonored check, Ronald's instructions were not to worry about it as he had enough money to cover it. On June 20, 1979 Clements told Ronald that New River had $45,000 worth of checks it could not cover. After June 20, the New River account was never in the black.

"This is not one of that class of cases where the *specific* intent is an essential ingredient of the crime and the guilt of the accused depends upon the proof of the specific intent with which the act was committed . . . [T]he law condemns and makes criminal the failure to pay only where the contract with the [seller] is for cash and superadded to the failure or refusal to pay is the criminal element that the purchaser makes away with or disposes of the [seller's] property before he has paid therefor . . . While criminal intent is a necessary element in the commission of the crime charged in this indictment, yet the criminal intent in such connection is simply the intent to do the act which the legislature has prohibited . . . The section is applicable only where the agreement to pay cash is not complied with by the buyer." *Cornell v. State,* 64 Ga. App. 202, 205-206 (12 SE2d 378) (1940). Viewing the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Arthur v. State,* 154 Ga. App. 735 (2) (269 SE2d 887) (1980). See *Coffee v. State,* 219 Ga. 328 (6) (133 SE2d 590) (1963); *Mallette v. State,* 119 Ga. App. 24 (165 SE2d 870) (1969).

2. There is no merit to appellants' contention that venue of the offenses of which they were indicted and convicted was not shown to have been in Tift County. Notwithstanding the fact that appellants' participation in the offenses was limited to their activities in Berrien County, "it seems to us sound to say that if [appellants] failed to pay [for the corn] by reason of the fact that [their] check was turned down, the prosecution might be allowed in the county where the possession was delivered to [them, i.e., Tift County]; for this is the county where [they] should presumptively account to the [seller] for the agricultural products sold to [them] for cash." *Blocker v. State,* 58 Ga. App. 560, 562 (199 SE 444) (1938); *Garmon v. State,* 219 Ga. 575 (4) (134 SE2d 796) (1964).

3. Appellants contend that the trial court erred in charging Code Ann. § 26-801 dealing with parties to a crime. Appellants argue that the prosecution's evidence failed to show that any crime had been committed in Tift County and further, that if a crime had been committed, the evidence showed that neither appellant was in any way personally involved.

The evidence in this case showed that appellants were both officers of New River and that both were familiar with the day-to-day

operations and financial condition of the company. Ronald hired all the company's employees; he authorized Bennett to buy and sell corn and kept informed as to the manager's activities on behalf of the company; he was aware of the company's financial condition, yet he continued to authorize the purchase and sale of corn. In addition to Ronald, Dean was the only person authorized to sign checks on behalf of the company; she reviewed the company books, made entries therein and took the company checkbook home with her; she signed checks in payment for the corn after being informed that there were insufficient funds in the company account to cover them.

"An officer or agent of a corporation . . . cannot assert that criminal acts, in form corporate acts, were not his acts merely because carried out by him through the instrumentality of the corporation which he controlled and dominated in all respects and which he employed for that purpose." *Bailey v. State,* 84 Ga. App. 839 (1, 2) (67 SE2d 830) (1951). Compare *Fishman v. State,* 128 Ga. App. 505 (5) (197 SE2d 467) (1973). Accordingly, under the circumstances in this case, the trial court did not err in instructing the jury that "every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime" and that "[a] person is concerned in the commission of a crime only if he . . . intentionally advises, encourages, hires, counsels, or procures another to commit the crime." Code Ann. § 26-801.

4. "The trial court did not err in admitting over objection of the [appellants] evidence of other transactions between the state's witness[es] and the [appellants] which occurred within a short time of the transaction under investigation. Each transaction was of the exact same type as the one under investigation and was admitted solely for the purpose of showing motive, scheme or bent of mind. The other transactions were at a time when the [appellants were] making the same type of purchases and, while technically each constituted a separate transaction, yet, were all a part of the same overall course of conduct which resulted in the indictment for which the [appellants were] on trial. The evidence was admissible under the decision in *Bacon v. State,* 209 Ga. 261 (71 SE2d 615) [(1952)], relied upon by the [appellants] as authority for this enumeration of error." *Marshall v. State,* 231 Ga. 89 (2) (200 SE2d 268) (1973).

*Judgment affirmed. Quillian, C. J., and McMurray, P. J., concur.*

DECIDED APRIL 7, 1981 —
REHEARING DENIED APRIL 28, 1981

*Thomas William Malone, Richard L. Hodge,* for appellants.
*Thomas H. Pittman, District Attorney, Curtis Mitchell French, Assistant District Attorney,* for appellee.